IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONIAL FAYSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-219-KAJ |
| ) | |
| ) | |
| BERNITA EARLE, PAUL HOWARD, ) | |
| and PATRICK RYAN, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE MOTION TO DISMISS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**STATEMENT OF FACTS**

1.  Plaintiff Donial Fayson ("Plaintiff" or "Fayson") is an inmate at Baylor Women's Correctional Institution ("BWCI"). Fayson is appearing *pro se* in this litigation and proceeding *in forma pauperis*.

2.  On April 7, 2004, Fayson filed a Complaint against Defendants Bernita Earle, Chaplain of BWCI ("Earle"), Paul Howard, Bureau of Prisons Chief ("Howard"), and Patrick Ryan, Warden of BWCI ("Ryan" and together with Earle and Howard, the "Defendants").

3.  On March 31, 2005, this Court dismissed Fayson's Complaint finding that the claims made against the Defendants had no arguable basis in law or in fact (D.I. 11 at 4-5). The Court, however, granted Fayson leave to file an amended complaint.

4.  Less than thirty (30) days after the Court dismissed the Complaint, on April 12, 2005, Fayson filed an amended complaint (the "First Amended Complaint") (D.I. 12). The amended Complaint was amended again on April 29, 2005 (the "Second Amended Complaint" and together with the First Amended Complaint, the "Amended Complaints") (D.I. 13).

5.  The allegations in Fayson's Amended Complaints stem from events that began in early 2003 when Fayson first began to study Islam at BWCI. In May 2003, Tahsiyn Ismaa'eel, a Religious Rights Advisor from the North American Islamic Foundation Inc. began visiting one of the inmates at BWCI for Islamic studies. On May 8, 2003, Fayson wrote a letter to Earle requesting that she be added to the list of inmates visiting with Ismaa'eel for Islamic studies. (See Earle Affidavit at Exhibit "A-5"). A few days later on May 12, 2003, Fayson was added to the list. (See Earle Affidavit at Exhibit "A-6").

6.  Shortly thereafter, on July 21, 2003, Fayson requested permission from Earle to study the Islamic religion. She also requested permission to wear a Khimar – the Muslim head covering – during her prayers, to celebrate Ramadan, and to receive a diet in accordance with Islamic law. Fayson was given permission to wear the Khimar in her cell. She was also advised that arrangements would be made for her to observe the Ramadan fast. (See Earle Affidavit at Exhibit "A-7").

7.  On October 22, 2003, Earle scheduled weekly one and a half (1½) hour sessions for the Muslim inmates, including Fayson, to meet for prayer and instruction during the month of Ramadan. The group met without an outside volunteer to oversee the sessions as Ismaa'eel had not received security clearance to come into the

Gym/Chapel area of BWCI for services. (See Earle Affidavit at Exhibit "A-8"). In addition to the fast, Fayson and other Muslim inmates were permitted to attend the EID Al Fitr Celebration marking the end of Ramadan. The meal for the Celebration was provided by the North American Islamic Foundation. Ismaa'eel brought the meal to BWCI, but she did not participate in the Celebration. (See Earle Affidavit at Exhibit "A-9-10").

8. In April 2004, BWCI retained Semab Chaudrhy of the Delaware Islamic Society to meet with Fayson and the other Muslim inmates, schedule Islamic classes, and provide the inmates with prayer rugs. Because Chaudrhy passed the security clearance he was authorized to enter BWCI and meet with the inmates in BWCI's Gym/Chapel area. (See Earle Affidavit at Exhibit "A-11-12").

9. A few months later on November 20, 2004, Fayson filed two grievances complaining that Ismaa'eel was not permitted to come into the visiting room to continue teachings and that she no longer wanted to participate in the Islamic prayer study group. Earle responded to Fayson's grievances stating that Ismaa'eel "comes into the Institution at least twice/week on Pastoral visits." (See Earle Affidavit at Exhibit "A-13-15"). Moreover Earle informed Fayson that an Islamic Prayer/Study Group was "set up and … on-going" but that Fayson did not have to attend if she did not want to attend. (See Earle Affidavit at Exhibit "A-16-21").

10. For reasons unknown to Earle, Fayson and the other Muslim inmates did not want to have classes with Chaudrhy. Instead, Fayson continued to demand that her religious advisor, Ismaa'eel, be allowed into BWCI to provide services. Eventually Chaudrhy ceased volunteering to teach classes at BWCI.

11.     During Ramadan in October 2005, Earle arranged for the Muslim inmates to assemble in the visiting room for 15 minutes at each of the five (5) prayer times and for an additional half (½) hour each evening as they broke fast. Friday evening prayer was also scheduled for one hour in the visiting room and Ismaa'eel attended to lead the group in prayer. (See Earle Affidavit at Exhibit "A-22-24").

12.     On August 3, 2005, Fayson sent a letter to Warden Ryan. Fayson stated in her letter that she wanted to thank Warden Ryan

> for all that you are doing to assist the Muslim Community. Currently, we meet once a week in the visiting room for a pastoral visit as a group. This hour and a half is the only 'class' that we have. I would like to seek your permission to have individual pastoral visits as well as this class time. … This additional time will allow me to learn this religion.

(See Exhibit "B"). Warden Ryan and Chaplain Earle granted Fayson's request and Fayson was permitted to have individual pastoral visits with Ismaa'eel. Ismaa'eel also continued to meet with the Muslim inmates as a group. (See Earle Affidavit at Exhibit "A-25-26").

13.     To date BWCI allows Fayson to wear her Khimar, participate in the Ramadan fast, attend the EID Celebration, attend the pastoral group visits led by Ismaa'eel, and schedule individual pastoral visits with Ismaa'eel. (See Earle Affidavit at A-4, ¶ 11).

14.     Fayson's Amended Complaints make several allegations against the Defendants. First, Fayson argues that the Defendants have opened her legal mail in violation of her constitutional rights. Second, Fayson contends that the Defendants violated her First Amendment rights by: a) forbidding her spiritual advisor, Ismaa'eel, to stay and teach at BWCI; b) denying her pastoral visits for a year; c) limiting her worship

and learning time to one hour each week; d) not providing her meals accommodating her religious diet; and e) failing to reprimand a correctional officer who made derogatory remarks about her beliefs.  Finally Fayson asserts that her equal protection rights have been violated because:  a) Christians are given ample time to worship and she is not; and b) a Jewish inmate receives a Kosher diet but she does not receive a Halal diet.

15. On January 30, 2006, Defendants filed a Motion to Dismiss Plaintiff's Complaint (the "Motion").  This is the Defendants' Memorandum of Points and Authorities in Support of the Motion to Dismiss (the "Memorandum").

### MEMORANDUM OF LAW

Defendants assert that Fayson's Amended Complaints must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules") for failure to state a claim upon which relief may be granted.  "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint."  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss the Court asks whether, "'the facts alleged in the complaint, even if true, fail to support the ... claim.'"  *Id.* (quoting *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988)).  A court must grant a motion to dismiss where "after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint."  *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Incorporated*, 140 F.3d 478, 483 (3d Cir. 1998).  Moreover, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  *Morse v. Lower Merion School District*, 132 F.3d

902, 906 (3d Cir. 1997). Given that no set of facts support the claims in Fayson's Amended Complaints the Defendants' Motion to Dismiss must be granted.

I.      **Opening Fayson's Legal Mail Did Not Violate Her Constitutional Rights.**

In her Second Amended Complaint, Fayson states that "The institution has continuously denied me my rights. They have opened my legal mail." (D.I. 13). Fayson's allegations fail to state a claim for several reasons. First, Fayson does not allege that the Defendants personally opened her legal mail. Second, Fayson cannot prove that she suffered any injury or prejudice as a result of her legal mail being opened.

### A. Plaintiff's Amended Complaints fail to allege any personal involvement on the part of the Defendants.

To establish a claim under section 1983 the plaintiff must prove that (1) the conduct complained of was committed by a person acting under color of state law and (2) that the plaintiff was deprived of a right or privilege secured by the Constitution or the law of the United States. *Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir. 1985). Moreover plaintiff must show that the accused officials "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981).

In this case Plaintiff's bald assertion that, "The institution has continuously denied me my rights. They have opened my legal mail" is insufficient to support a claim under section 1983 as it fails to state that any of the named Defendants violated Fayson's legal rights. Plaintiff does not allege that either Earle, Howard or Ryan opened her legal mail. Rather Plaintiff states that the institution opened her legal mail.

- 6 -

Because Fayson cannot show a causal link between the Defendants' actions and the opening of her legal mail she cannot prove her case under section 1983 and the claim must be dismissed.

### B. Fayson suffered no injury or prejudice as a result of her mail being opened.

Fayson's Amended Complaints fail to provide any detail regarding the incident surrounding the opening of her legal mail. BWCI's records indicate, however, that on October 18, 2004, Fayson filed a grievance stating that her legal mail had been opened. (See Exhibit "C"). Therefore the Defendants will assume, for purposes of this Memorandum, that the incident Fayson complained of in her October grievance is the one to which she is referring to in her Amended Complaints. Defendants deny, however, that the opening of Fayson's legal mail during this incident violated her constitutional rights.

"Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (quoting *Price v. Johnson*, 334 U.S. 266, 285 (1948)). Although a prisoner may not be entirely stripped of constitutional protections when he is imprisoned "his rights may be diminished by the needs and exigencies of the institutional environment,…." *Id.*

In *Wolff v. McDonnell*, the United States Supreme Court addressed the issue of whether "letters determined or found to be from attorneys may be opened by prison authorities in the presence of the inmate or whether such mail must be delivered unopened if normal detection techniques fail to indicate contraband." *Id.* at 575. The Court held that,

> [T]he ability to open the mail in the presence of inmates, … could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters. … [W]e think that petitioners, by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires.

*Id.* at 577. In addition to showing that legal mail was opened outside of her presence, a plaintiff must also show she suffered some actual injury or prejudice by her mail being opened outside of her presence. *See, Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997).

In her October grievance, Fayson stated that "I received legal mail without an envelope. However on Friday October 15, I received a receipt from the same court pertaining to the same case in an envelope. I did notice that the staple had been removed and replaced in a totally different place. I feel my legal mail is being tampered with." (See Exhibit "C").

BWCI's Resident Handbook clearly states that "Legal mail is opened and signed in the presence of the housing unit officer." (See Exhibit "D"). Therefore the Defendants contend that BWCI abides by the procedures held constitutional in *Wolff*. In the investigation of Fayson's grievance she stated that "her mail is always forwarded to her from Records with her name on it for her to open and sign. This is the one time she received her legal mail open. Lt. Smith concluded this was an isolated incident and no further evidence supports her claim of mail tampering." (See Exhibit "C"). Thus the opening of Fayson's legal mail outside of her presence was an isolated incident. On

every other occasion BWCI adhered to the procedures outlined in the Resident Handbook.

Fayson did not allege in her grievance, nor has she alleged in the Amended Complaints, that she suffered any injury or prejudice as a result of her legal mail being opened. Because the opening of her legal mail was an isolated incident that caused no injury or prejudice, Fayson cannot prove that her constitutional rights have been violated. Therefore this claim must be dismissed.

Given that Fayson has not alleged that the Defendants participated in the opening of her legal mail and given that Fayson suffered no injury or prejudice as a result of her mail being opened, Fayson's claim must be dismissed for failure to state a claim upon which relief may be granted.

## II.      The Defendants Have Not Violated Fayson's First Amendment Rights.

Fayson makes several allegations regarding the violation of her First Amendment rights. First, she contends that Ismaa'eel, her spiritual advisor, is not permitted to teach at BWCI. Second, she asserts that she was denied pastoral visits for a year. Third, she claims that her worship and learning times are limited to one hour. Fourth, she argues that she has not been given a diet that accommodates her religious beliefs. Finally, she contends that derogatory remarks were made about her beliefs by a correctional officer and the officer was never reprimanded. The Defendants assert that Fayson cannot prove any of the allegations in her Amended Complaints. Therefore the Motion to Dismiss must be granted.

"'[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" *O'Lone v. Shabazz*, 482 U.S.

342, 348 (1987) (quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). Included in the rights prisoners retain are the protections of the First Amendment and the ability to engage in the free exercise of religion. *Id.* But "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948). Thus the Supreme Court has held that, "'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Williams v. Morton*, 343 F.3d 212, 216 (3d Cir. 2003) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In this case the Defendants have accommodated Fayson's religious needs. Therefore her First Amendment rights have not been violated. Moreover to the extent Fayson's rights were limited, the Defendants were within their authority to limit her rights as established by case law.

> **A. Fayson's spiritual advisor is permitted to teach at BWCI, therefore the Defendants have not violated Fayson's constitutional rights.**

Fayson contends that her spiritual advisor is not permitted to teach at BWCI. This, however, is false. The Earle Affidavit and the supporting documentation clearly show that Ismaa'eel conducts weekly visits with Fayson and the Muslim inmates at BWCI. (See Exhibits "A-1-26"). In addition, BWCI's visitor logs prove that Ismaa'eel is, in fact, visiting the inmates at least once a week. (See Exhibit "E"). Thus Fayson has access to her spiritual advisor.

Moreover to the extent Fayson is arguing that Ismaa'eel should be permitted to have access to the Gym/Chapel area of BWCI to conduct services, this is

incorrect. Ismaa'eel was denied access to the Gym/Chapel area because she was not able to clear a security background check. Therefore prison regulations prohibited her from accessing that portion of the facility. Given that security concerns are a legitimate reason for prohibiting Ismaa'eel from entering the BWCI Gym/Chapel area, Fayson cannot support her claim that her constitutional rights have been violated. *See, e.g. O'Lone*, 482 U.S. at 350-51 (finding that institutional order and security are legitimate penal concerns). Further, even though Ismaa'eel is not permitted to enter the Gym/Chapel area of the facility Fayson is still able to receive instruction from her in the visiting area. Therefore Defendants have not denied Fayson access to spiritual instruction and they have not violated her constitutional rights.

In addition, BWCI attempted to provide Fayson and the Muslim community with an Islamic instructor who passed security clearance and was permitted to have greater access to BWCI, including the Gym/Chapel area. Fayson, however, did not like this teacher and demanded that she receive instruction from Ismaa'eel. (See Exhibit "A-13-15"). "An inmate does not have the right under the Free Exercise Clause to have the particular clergyman of his choice provided to him." *McClaflin v. Pearce*, 743 F.Supp 1381, 1384 (D.Or. 1990). Therefore although Fayson has the right to freely exercise her religion, she does not have the right to pick and choose the clergy she reeives.

Given that the Defendants and BWCI have provided and continue to provide Fayson ample access to Ismaa'eel and other Muslim teachers, Fayson's claim must be denied.

  **B. Fayson has not been denied her pastoral visits, therefore the Defendants have not violated her First Amendment rights.**

Fayson next asserts that she has been denied pastoral visits for a year. Fayson's accusations, however, are false. First, Fayson offers no proof that she has been denied her pastoral visits. Such a 'bald assertion' cannot withstand a 12(b)(6) motion and must be dismissed. Second BWCI's visitor logs clearly show that Ismaa'eel visits with the inmates, including Fayson, at least once per week. (See Exhibit "E"). Moreover, in addition to Ismaa'eel's weekly visits with the Muslim inmates as a group, Earle has also arranged for Fayson to receive individual sessions with Ismaa'eel. (See Exhibit "A-25-26"). Therefore the evidence clearly reflects that Fayson has not been denied her pastoral visits.

  **C. The amount of time Fayson receives to worship and learn about her religion does not violate her First Amendment rights.**

Fayson contends that her worship and learning time is limited to one hour per week in violation of her constitutional rights. Defendants contend that the time Fayson receives for classes does not violate her constitutional rights.

Fayson and the Muslim community receive a group instruction session with Ismaa'eel once per week for one and a half (1½) hours per week. Fayson, however, is also free to schedule private sessions with Ismaa'eel in addition to this time. Moreover Fayson is free to worship, pray and read in her cell. Taking all of these facts into consideration it is evident that the Defendants have not restricted Fayson's ability to worship and learn about her religion.

> **D.     Fayson's belief that she must observe an Islamic diet is not sincere, therefore she cannot claim that she is entitled to <u>constitutional protection.</u>**

Fayson next argues that BWCI continues to deny her a Halal diet in accordance with her religious beliefs. The Defendants contend that Fayson does not sincerely believe in following a Halal diet, therefore, she is not entitled to constitutional protection. Moreover the Defendants assert that because they do not control the food services for the prison, they do not have the ability to give Fayson the relief she requests.

The Third Circuit holds that, "'only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection.'" *Williams*, 343 F.3d at 217 (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000)). A review of Fayson's commissary sheets shows that Fayson purchases items that Defendants contend are not in accordance with the Halal diet. For example in the month of December 2005 Fayson purchased items such as Slim Jims, Cheez Its, Beef Summer Sausage, Nachitos and Tuna in a Bag. In addition to these items, in the time since she filed her Amended Complaints, Fayson has purchased Hot Fish Steak, Cheddar Cheese and Nacho Combos. (See Exhibit "F"). Defendants assert that Fayson clearly does not believe in following a Halal diet, therefore she is not entitled to claim that her rights are being violated by not receiving a Halal diet.

Moreover, the Defendants do not control the food that is served to the inmates. Rather the Bureau of Management Services is in charge of food preparation and distribution for the inmates. Therefore the Defendants do not have the ability to give Fayson a Halal diet.

Given that Fayson does not hold a sincere belief that she is to follow a Halal diet she is not entitled to seek constitutional protection. Moreover given that the Defendants do not control the food Fayson receives, this claim must be dismissed.

### E. To the extent a correctional officer made a derogatory remark about Fayson's beliefs, the officer was reprimanded for the remark and no constitutional violation occurred.

Fayson asserts that one of the correctional officers made a derogatory remark about her faith and that the officer was never reprimanded for making the remark. This, however, is incorrect. On November 15, 2004, Fayson filed a grievance stating that she overheard Correctional Officer Hubbard say to an inmate "Stay away from the Muslims, because they aren't right." (See Exhibit "G"). In response to Fayson's grievance Captain Repeti said that he would "discuss the complaint with C/O Hubbard and explain to her that making a statement of this nature is not acceptable." (See *Id.*). Therefore the correctional officer was informed that the remarks she allegedly made were not in accordance with BWCI's policies.

Further Fayson does not allege in her Amended Complaints, or in her grievance, that any of the named Defendants made a derogatory remark about her faith. Instead she appears to argue that the Defendants are liable for the remark of the correctional officer under the theory of vicarious liability. It is well established, however, that section 1983 will not support a claim based on the theory of *respondeat superior* or vicarious liability. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Therefore to the extent Fayson seeks to hold the Defendants liable for the comments allegedly made by a correctional officer her claim must fail.

The Defendants have not violated Fayson's First Amendment rights. The evidence clearly indicates that Earle and Ryan have gone through great lengths to provide Fayson and the Muslim inmates with the instruction they need to study their faith. Further Fayson's letter to Ryan, dated August 3, 2005 (Exhibit "B"), also supports the argument that Fayson was satisfied with the services the Defendants were providing the Muslim community. Therefore Fayson cannot support her claim and the Amended Complaints must be dismissed.

### III.     Fayson's Equal Protection rights have not been violated.

Fayson claims that the Defendants violated her equal protection rights by not permitting her to worship as often as those of the Christian faith and by denying her a Halal diet when a Jewish inmate receives a Kosher diet.

The Equal Protection Clause mandates that all persons similarly situated should be treated alike. *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

> A prison regulation does not violate the Equal Protection Clause so long as the classifications established by the regulation serve a legitimate government interest and are reasonably related to that end. … To establish a violation under the equal protection clause in the absence of a suspect classification, a plaintiff must show that there could be no rational basis for being treated differently from other similarly situated individuals. The plaintiff bears the burden of proving that the prison regulation or policy at issue is not rationally related to the stated purpose.

*Allah v. Stachelek*, 1998 WL 281930, at *12 (E.D. Pa. May 29, 1998) (Exhibit "H") (citing *Lewis v. Casey*, 518 U.S. 343 (1996); *Brandon v. District of Columbia Board of Parole*, 734 F.2d 56, 60 (D.C. Cir. 1984)). Moreover, "prison officials need not provide exactly the same religious facilities or personnel to prisoners of every faith." *McClaflin*, 743 F.Supp. at 1384.

Fayson argues that she is not permitted to worship as often as the Christian inmates. Fayson, however, has provided no evidence that the Christian inmates are entitled to worship longer than she worships. Further Fayson has not shown that the Defendants are the cause for her receiving allegedly receiving less time to worship. Therefore Fayson cannot support a claim for relief under section 1983.

To the extent Fayson asserts that the Christians are provided more teachers, BWCI does not have to provide exactly the same facilities or personnel to prisoners of every faith. *See, McClaflin*, 743 F.Supp. at 1384. Moreover Earle attempted to provide Fayson and the other Muslim inmates access to another teacher who was permitted to enter the Gym/Chapel area of BWCI to facilitate services and teach classes. Fayson, however, did not like this instructor and instead continued to demand that Ismaa'eel be allowed in the facility. Fayson's equal protection rights, therefore, have not been violated.

Fayson also argues that a Jewish inmate receives a Kosher meal but that she is not served a Halal meal. As stated earlier, the Constitution does not protect the mere assertion of religious beliefs. Rather the belief must be sincerely held. *Williams*, 343 F.3d at 217. Fayson's purchase of items from the commissary clearly shows that she does not sincerely believe that she must follow a Halal diet. (See Exhibit "E"). Therefore Fayson is not entitled to seek constitutional protect of this right, to the extent it exists.

Finally, as also stated earlier, the Defendants do not control the food that Fayson receives. The Bureau of Management Services governs food service for the

prisons. Therefore the Defendants have not violated Plaintiff's rights and her Amended Complaints must be dismissed.

### IV. The Defendants Are Immune From Liability For Plaintiff's Claims.

Plaintiff's Amended Complaints seek to hold the Defendants liable in their official, as well as their individual capacities. The Defendants', however, are immune from such claims.

To the extent Plaintiff's Amended Complaints name the Defendants in their official capacities the Defendants are immune from liability under the Eleventh Amendment. The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64 (1996). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment, however, only a clear indication of Congress's intent to waive the state's immunity will produce this result. *Id.* No such clear intent can be found in 42 U.S.C. § 1983. In fact, Congress's intent appears to be to the contrary as the statute facially allows suits only to be brought against persons. 42 U.S.C. § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Under federal law, the State defendants in their official capacities are not "persons" for the purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, this Court lacks jurisdiction over the Defendants in their official capacities, and the Defendants are outside the class of persons subject to liability under 42 U.S.C. § 1983. Therefore dismissal is appropriate.

Moreover, Plaintiff cannot maintain an action against the Defendants in their individual capacities pursuant to the doctrine of qualified immunity. Government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, State defendants are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of their discretionary duties. *Vick v. Haller*, 512 A.2d 249, 252 (Del. Super. 1986) (*aff'd in part and rev'd in part on procedural grounds*). In this case the Defendants did not violate Fayson's rights nor do they believe that the actions they took violated her rights. Moreover the actions committed by the Defendants were in good faith without negligence. Therefore the Defendants are immune from liability.

Given that the Defendants are immune from liability in their individual and official capacities Plaintiff's claims cannot be supported and the Amended Complaints must be dismissed.

WHEREFORE, the Defendants respectfully request that Plaintiff's Amended Complaints be dismissed for failure to state a claim upon which relief may be granted.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400

Attorney for Defendants

Dated: January 30, 2006

# **CERTIFICATE OF SERVICE**

I, Erika Y. Tross, Esq., hereby certify that on January 30, 2006, I caused a true and correct copy of the attached *Defendants' Memorandum of Points and Authorities in Support of the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)* to be served on the following individual in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Donial Fayson
SBI #463713
Baylor Women's Correctional Institution
660 Baylor Boulevard
New Castle, DE 19720

**MANNER OF DELIVERY:**

__ One true copy by facsimile transmission to each recipient

✓ Two true copies by first class mail, postage prepaid, to each recipient

__ Two true copies by Federal Express

__ Two true copies by hand delivery to each recipient

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400