IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONIAL FAYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-219-KAJ |
| | ) | |
| BERNITA EARLE, PAUL HOWARD, | ) | |
| and PATRICK RYAN, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OPINION**

_____

Donial Fayson, Baylor Women's Correctional Institution, 660 Baylor Blvd., New Castle, DE 19720;  Pro se Plaintiff.

Erica Y. Tross, Esq., Delaware Department of Justice, 820 N. French Street, 6th Floor, Wilmington, DE 19801; Counsel for Defendants.

_____

November 7, 2006
Wilmington, Delaware

JORDAN, DISTRICT JUDGE

## I.    INTRODUCTION

Donial Fayson ("Fayson"), SBI # 463713, is a pro se plaintiff incarcerated at the

Baylor Women's Correctional Institution ("BWCI") in New Castle, Delaware. In her

amended complaint,[1] Fayson makes a variety of constitutional and statutory claims

arising from her incarceration and centering on her allegations that prison authorities

are discriminating against her because of her faith in Islam.  (D.I. 12, 13.)  Jurisdiction

over Fayson's § 1983 claims is appropriate under 28 U.S.C. §§ 1331 and 1343(a).

Before me is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure

12(b)(6) (D. I. 22, the "Motion"), filed by Defendants Bernita Earle, Chaplain of BWCI;

Paul Howard, Bureau of Prison Chief; and Patrick Ryan, Warden of BWCI (collectively,

"Defendants").  Because the Motion and Fayson's response to it (D.I. 25) rely on

materials outside of the complaint, the Motion to Dismiss has been converted to a

Motion for Summary Judgment.[2]

For the reasons that follow, the Motion will be granted in part and denied in part.

---

[1]  Fayson filed her original complaint pursuant to 42 U.S.C. § 1983.  That complaint was dismissed without prejudice because her claim against defendant Howard rested solely on vicarious liability, and because she failed to provide a "short and plain statement" of how Defendants Earle and Ryan had violated her constitutional rights. Fed. R. Civ. P. 8(a).  (Docket Item ["D.I."] 11.)

[2]  The parties were given notice of my intent to treat the Motion as one for summary judgment.  (D.I. 29.)

## II.    FACTUAL BACKGROUND[3]

Fayson first expressed interest to BWCI correctional officers about attending Islamic studies classes on May 8, 2003. (D.I. 23 at A5.)  On May 12, 2003, BWCI Chaplain Bernita Earle added Fayson to the list of prisoners permitted to participate in the Islamic prayer group. (*Id.* at A6; D.I. 25 at 1.)  In July 2003, Fayson further requested permission to wear a Muslim head-covering, to receive a diet according to Islamic law (a *Halal* diet), and to observe the Ramadan fast. (D.I. 23 at A7.)  Pursuant to Earle's recommendation, Fayson was allowed to wear the head-covering (*Id.* at A2, ¶3), and also was given permission to observe Ramadan, including fasting and ritual fast-breaking activities. (*Id.* at A8-10.)  However, BWCI made no accommodation for her dietary request.[4]

In October 2003, BWCI granted inmates permission to meet "for the purpose of prayer and instruction on prayer," in anticipation of the Ramadan observance. (*Id.* at A8.)  According to BWCI, because no outside volunteer with proper security clearance had been identified, inmates met for prayer without an outside prayer leader. (*Id.* at A8.)  Tahsiyn Ismaa'eel, Directress of Women's Affairs at the North American Islamic Foundation, Inc., delivered food for the EID Al Fitr Celebration (marking the end of the Ramadan fast) on November 26, 2003, but was not permitted to remain for the

---

[3]  The following background information is stated in the light most favorable to the plaintiff and does not constitute findings of fact.

[4]  Although Fayson does not provide an affidavit supporting her claim that her request for *Halal* meals was denied, Defendants' admit in their Supporting Memorandum that she currently does not receive a diet in accordance with her asserted religious beliefs (D.I. 23 at 13.)

celebration. (*Id.* at A10.)  On January, 24, 2004, Fayson filed a grievance alleging that

pastoral visits from Ismaa'eel had been withheld. (D.I. 25, Ex. G, at 2.)

In the spring of 2004, BWCI arranged for Semab Chaudry, of the Delaware

Islamic Society, to meet with the inmates.  (D.I. 23 at A11.)  Earle issued a tentative

schedule of six classes with Chaudry, focusing on Islamic learning and Qur'anic

recitation.  (*Id.* at A12.)  Fayson filed a grievance on April 15, 2004, expressing her

intent not to attend Chaudry's Islamic study classes. (D.I. 25 at Ex. G.)  Fayson wanted

to be "taught correctly" and evidently was unhappy with Chaudry because he referred to

Sufism, which, according to Fayson, is heretical.  (*Id.* at ¶12, Ex. G.)  At some point in

2004, Chaudry ceased visiting BWCI.  (D.I. 23 at A3, ¶8; D.I. 25 at ¶11.)  Fayson claims

that Chaudry was uncomfortable teaching women.  (D.I. 25 at ¶11.)  Earle, by contrast,

contends that the visits ceased because "Fayson and the other Muslim inmates no

longer wished to have classes with Chaudry."  (D.I. 23 at A3, ¶8.)

During October and the first part of November 2004, the Islamic prayer and study

group was held in BWCI's gym/chapel.  (*Id.* at A19-21.)  As of November 18, 2004, the

group began meeting in a location called the "Visiting Room," rather than the

gym/chapel.  (D.I. 23 at A21.)  On November 30, 2004, Fayson filed two grievances.

(*Id.* at A13, A16.)  In the first grievance, Fayson complained that Ismaa'eel had not

been permitted to conduct pastoral visits in the visiting area.  (*Id.* at A13.)  In the

second grievance, Fayson refused to continue participating in the Islamic study group

for "lack of a teacher being provided to the [Muslim] community."  (D.I. 23 at A16.)

Earle responded to those grievances by informing Fayson that, according to the

Visitors' Log, Ismaa'eel was visiting BWCI at least twice weekly  (*Id.* at A15, Ex. E), and by providing documentation to show that the Islamic prayer and study group was set up and ongoing.  (*Id.* at A18-21.)

Inmates were permitted to meet together during the 2005 Ramadan holiday for daily prayer and fast-breaking, and for Friday evening prayer with Ismaa'eel.  (*Id.* at A22-23.)  Inmates also celebrated the 2005 EID Al Fitr Celebration with Ismaa'eel, with food supplied by the North American Islamic Foundation and the Manhaj as-Salaf Da-wah Center.  (*Id.* at A24.)

On August 3, 2005, Fayson wrote to BWCI Warden Patrick Ryan to thank him for "all that [he was] doing to assist the Muslim community," and to request permission to schedule individual pastoral visits with Ismaa'eel.  (*Id.*, Ex. B.)  Fayson is now allowed to have individual pastoral visits with Ismaa'eel.  (*Id.* at A3, A25.)  On December 1, 2005, Earle issued a memorandum indicating that Ismaa'eel was permitted to meet with the Muslim inmates for 1.5 hours every Friday morning.  (*Id.* at A26.)  Ismaa'eel is not, however, permitted to conduct Islamic services in the BWCI Gym/Chapel area, because she has not received security clearance from Warden Ryan.  (*Id.* at A3, ¶10; D.I. 32, Ex. I, ¶4.)  It also seems that Fayson does not currently receive *Halal* meals.

In October and November of 2004, Fayson filed two other, unrelated grievances. On October 18, 2004, Fayson complained that she had received her legal mail already opened, rather than in an envelope, and that the staple connecting the pages together had been removed and replaced, suggesting that her mail may have been photocopied.

4

(D.I. 23, Ex. C at 1.)  In response, BWCI conducted an investigation, finding that

Fayson did receive her mail open, but that it constituted an "isolated incident" and "no

further evidence supports her claim of mail tampering." (*Id.*, Ex. C at 2.)  On November

15, 2004, Fayson filed a grievance because she had overheard a BWCI correctional

officer tell a fellow inmate that she should "stay away from Muslims, because they aren't

right." (*Id.,* Ex. G at 1.)  A BWCI document indicates that a supervisor discussed this

issue with the correctional officer, informing the officer that such comments were "not

acceptable." (*Id.*, Ex. G at 2.)

## III.   PROCEDURAL BACKGROUND

On April 9, 2004, Fayson filed her original action against Defendants, under 42

U.S.C. § 1983, claiming that Defendants denied her ability to practice her religion in

violation of the First Amendment.  (D.I. 2 at 3.)  She requested that the Department of

Corrections "cover all expenses pertaining to this case," that the court allow her to be

"taught correctly by [her] religious advisor," and that the court enjoin Defendants from

engaging in any further religious discrimination.  (*Id.* at 4.)  On March 31, 2005, I issued

a Memorandum Order dismissing Fayson's claim without prejudice, under 28 U.S.C. §§

1915(e)(2)(B) - 1915A(b)(1).  (D.I. 11 at 5.)  I also granted Fayson leave to amend the

complaint regarding her claim within thirty days from that Order.  (*Id.* at 5-6.)

Fayson subsequently filed two timely amendments to the original complaint,

which provide a more complete statement of her claims. (D.I. 12, 13.)  Pro se

complaints are to be construed liberally, and are interpreted to raise the strongest

arguments suggested therein. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)

5

(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Todaro v. Bowman*, 872 F.2d
43, 44 n.1 (3d Cir. 1989). So viewed, Fayson's Amended Complaint alleges multiple
claims for equitable relief under 42 U.S.C. § 1983. First, she alleges that she was
denied pastoral visits, that her worship time was unduly limited, and that her teacher
was denied meaningful access to BWCI, in violation of her right to freely exercise her
religion under the First Amendment, the equal protection guarantee of the Fourteenth
Amendment (the "Equal Protection Clause"), and the Religious Land Use and
Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc ("RLUIPA").[5] Second, she
alleges that she has been wrongfully denied a *Halal* diet, in violation of the First
Amendment, RLUIPA, and the Equal Protection Clause. Third, she alleges that
Defendants have opened her legal mail, hindering her access to the courts, in violation
of the Fourteenth Amendment. Fourth, she alleges that a correctional officer made
derogatory comments about her faith and was not reprimanded, in violation of the
Eighth and Fourteenth Amendments.

Defendants have filed a Motion to Dismiss, pursuant to Federal Rule of Civil
Procedure 12(b)(6). (D.I. 22.) Defendants have since filed additional documents to
supplement and support their Motion to Dismiss. (D.I. 32.) If, on a motion to dismiss
for failure to state a claim, "matters outside the pleadings are presented to and not
excluded by the court, the motion shall be treated as one for summary judgment and

---

[5] Fayson does not specifically raise RLUIPA, although she did include a copy of
the statute in her response to Defendants' Motion. (D.I. 25.) Because her Amended
Complaint is to be liberally construed, I will consider it as raising a RLUIPA claim. *See
e.g.*, *Dingle v. Zon*, No. 02-0058, 2006 WL 1527156, at *1-*2 (2d Cir. June 1, 2006);
*Clark v. Levesque*, No. 3:03CV795, 2006 WL 691999, at *5 (D. Conn. Mar. 17, 2006);
*Clark v. Briley*, No. 03C3852, 2005 WL 2369330, at * 3 (N.D. Ill. Sept. 26, 2005).

disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). "The element that triggers the conversion [of a 12(b)(6) motion to dismiss into one for summary judgment] is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 at 148 (3d ed. 2004); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

When a motion to dismiss is thus addressed as a motion for summary judgment, the parties must be given "reasonable opportunity to present all material made pertinent to such a motion." Fed. R. Civ. P. 12(b). The non-moving party has a reasonable opportunity to oppose summary judgment when that party has a chance to demonstrate that there is no genuine issue as to any material fact by submitting "affidavits or other materials in opposition to the dispositive motion." *Bagwell v. Brewington-Carr*, No. Civ. A. 97-714-GMS, 2000 WL 1239960, at *1 (D. Del. Aug. 20, 2000) (citing *Neal v. Kelly*, 963 F.2d 453, 455-56 (D.C. Cir.1992)), *aff'd*, 32 F. App'x 31 (3d Cir. 2002).

By submitting evidence with their motion, Defendants apparently intended to test not only whether Fayson stated a claim in her amended complaint, but whether there was any factual basis for her allegations. Fayson also submitted documents intended to rebut Defendants' evidence. In particular, Fayson submitted internal BWCI memoranda and correspondence, copies of grievance reports, guidelines for a *Halal* diet, and menus from the BWCI cafeteria. (D.I. 25.) Further, in a July 5, 2006 order (D.I. 29), I gave the parties express notice of my intention to convert Defendants' Motion to Dismiss to one for summary judgment, and I granted time to gather and submit additional evidence to oppose the motion. Fayson thus has been afforded a

7

reasonable opportunity to present material in opposition to summary judgment. *See* *Bagwell,* 2000 WL 1239960 at *1 (holding that conversion was appropriate where plaintiff "submitted a wealth of materials outside of the pleadings, including numerous documents and. . .sworn affidavits"). Accordingly, I will treat Defendants' Motion to Dismiss as a Motion for Summary Judgment.

## IV.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, a court should not make credibility determinations or weigh the evidence. *Id.* To defeat a motion for summary judgment, Rule 56(c) requires that the non-moving party "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.*, 475 U.S. at 587 (citation omitted). Accordingly, a mere scintilla of evidence in support

of the nonmoving party is insufficient for a court to deny summary judgment. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## V.    DISCUSSION

### A.    Denial of Religious Services and Study Classes[6]

#### 1.    Contentions of the Parties

Fayson makes a number of claims arising from what she contends to be

insufficient access by the Muslim community at BWCI to religious services and

instruction. Specifically, she alleges that she has been denied pastoral visits for one

year, that her religious advisor, Ismaa'eel, is "allowed to make a regular visit but can't

come in and teach. . .correctly," and that Ismaa'eel is unduly restricted as to which part

of the institution she may enter, even though volunteers for Christian inmates are not so

restricted. (D.I. 12, 13.) She contends that the Muslim community is limited to "one

pastoral" visit per week, amounting to an hour, and alleges that Defendants have

"consistently denied [the Muslim community] the right to have any religious services or

study classes." (D.I. 12, 13.) She argues that Defendants discriminate against the

Muslim community because they provide greater access to religious services for

Christian inmates. (*Id.*) To the extent Fayson alleges that Defendants' conduct has

denied her right to freely exercise her religion, her claim implicates the First

Amendment and RLUIPA. Her allegation that Muslims are treated differently than

Christians implicates the Equal Protection Clause.

---

[6] Plaintiff's claims regarding the failure to provide her with a *Halal* diet are discussed separately. (*See infra* pp. 19-23.)

Regarding Fayson's being denied pastoral visits for one year, Defendants assert that Fayson has not submitted evidence of such denial. (D.I. 23 at 12.) The Defendants have provided evidence that Ismaa'eel has made regular visits to the Muslim inmates, including Fayson. (*Id.* at A25-26, Ex. E.) With respect to Fayson's claim that BWCI has impeded Ismaa'eel's ability to teach at BWCI, Defendants do not dispute that they have restricted Ismaa'eel's access to the facility. ( D.I. 32, Ex. I at 2; D.I 23 at A3, ¶7.) Earle's affidavit acknowledges that Ismaa'eel was not permitted access to the "Gym/Chapel" area because "she did not receive security clearance from the Warden." (D.I. 23 at A3, ¶10.) The affidavit also indicates that BWCI brought in an outside instructor who had greater access to the facility, but that instructor was rejected by Fayson. (*Id.* at A2, ¶6, A3, ¶8, A12.) Defendants' exhibits demonstrate that the Muslim inmates meet weekly in a group and are afforded opportunities to meet individually with Ismaa'eel.[7] (*Id.* at A25, Ex. E.) Defendants also offer evidence showing that Muslim inmates meet together for 1.5 hours per week, in addition to individual pastoral time. (*Id.* at 12, A3, ¶¶9-10, A25-26.) While Defendants do not dispute the sincerity of Fayson's belief in the need for prayer and instruction, they do assert, as a matter of law, that BWCI's provision for Fayson's religious instruction is sufficient to defeat her free exercise claim.

Responding to Fayson's claim that BWCI has discriminated against her in favor of Christian inmates, Defendants contend that they are not legally obliged to provide the

---

[7] In her affidavit, Earle indicates that Fayson has scheduled at least one individual pastoral session with Ismaa'eel. (D.I. 23 at A25.)

10

same facilities to prisoners of every faith. (*Id*. at 16.) In addition, they claim that

Fayson lacks evidence to establish an equal protection violation. (*Id*. at 15-17.)

        2.    *RLUIPA Claim*

      Incarcerated persons have a statutory right to follow the religious teachings of

their choice. RLUIPA provides that:

> No government shall impose a substantial burden on the religious
> exercise of a person residing in or confined to an institution ... even if the
> burden results from a rule of general applicability, unless the government
> demonstrates that imposition of the burden on that person – (1) is in
> furtherance of a compelling interest; and (2) is the least restrictive means
> of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).[8] To prevail under RLUIPA, an inmate must demonstrate that

the State has imposed a "substantial burden" on the inmate's "religious exercise."

Because RLUIPA defines "religious exercise" to include "any exercise of religion,

whether or not compelled by, or central to, a system of religious belief," this provision

applies to Fayson's participation in prayer and religious education. 42 U.S.C. § 2000cc-

5. If Fayson can produce prima facie evidence that Defendants imposed a substantial

burden on her religious exercise, the burden shifts to the Defendants to demonstrate

that the challenged regulation furthers a compelling governmental interest and is the

least restrictive means of furthering that compelling interest. 42 U.S.C. § 2000cc-1(a) &

---

    [8] RLUIPA only applies to penal institutions that receives Federal financial
assistance, or to those where the "substantial burden" on religious exercise affects
interstate or foreign commerce, or commerce with Indian tribes. 42 U.S.C. § 2000cc(2).
No evidence has been presented as to whether BWCI receives Federal financial
assistance, or whether the burden in question affects commerce of those types.
Because Fayson's RLUIPA claim fails in any event, I assume that this jurisdictional
prerequisite is satisfied.

2(b). Because I conclude that Fayson has not demonstrated that the Defendants imposed a substantial burden on her religious exercise, it is unnecessary for the Defendants to establish a compelling governmental interest or that they used the least restrictive means of furthering such an interest.

Although the text of RLUIPA contains no definition of "substantial burden," the courts have explained the concept in several, related ways. Under one view, a substantial burden is one that "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise. . .effectively impracticable."[9] Under another view, a substantial burden exists where a person is required to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning the precepts of her religion. . .on the other hand."[10]

---

[9] *Lighthouse Inst. for Evangelism, Inc. v. City of Long Beach*, 100 F. App'x 70, 77 (3d Cir. 2004) (quoting *Civil Liberties for Urban Believers (C.L.U.B.) v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003), *cert. denied*, 541 U.S. 1096 (2004)), *cert. denied*, 543 U.S. 1120 (2005); *see also Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (stating that a substantial burden results where government policy "significantly inhibit[s]" conduct or expression of "central tenet" or religious belief), *cert. denied*, 543 U.S. 991 (2004).

[10] *Sherbert v. Verner,* 374 U.S. 398, 404 (1963); *see also Thomas v. Review Bd. of the Ind. Employment Sec. Div.,* 450 U.S. 707, 718 (1981) (holding that there is a substantial burden when the state "put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1217 (11th Cir. 2004) (stating that a substantial burden results from "pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct"), *cert. denied*, 543 U.S. 1146 (2005); *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) ("a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."), *cert. denied*, 545 U.S. 1104 (2005).

Here, Fayson complains that she has been denied sufficient access to Muslim religious services and instruction. However, Fayson neither alleges in her amended complaint, nor demonstrates with supporting affidavits, that her religious exercise has become impracticable, that she has been forced to abandon the precepts of her religion, or that she has been forced to act in a way that violates her sincerely held religious beliefs. The record demonstrates that Muslim inmates meet with Ms. Ismaa'eel for 1.5 hours a week to be instructed in Islam. (D.I. 23 at A3, Ex. E.) Although Defendants have restricted Ismaa'eel's access to the "Gym/Chapel" area because "she did not receive security clearance from the Warden" (D.I. 23 at A3, ¶10), she is permitted to schedule, and has scheduled, individual pastoral visits with the Muslim inmates, including Fayson. (*Id.* at 12, A3, ¶¶9-10, A25-26.)[11] In addition, Muslim inmates at BWCI are permitted to wear head coverings (*Id.* at A4, ¶11), observe the Ramadan fast (*Id.* at A4, ¶11, A22), and participate in the EID Al Fitr Celebration. (*Id.* at A4, ¶11, A24.) BWCI also has an Islamic library for inmate use. (*Id.* at A4, ¶11.) In short, Fayson has not demonstrated that Defendants have imposed a substantial burden on her religious exercise by imposing regulations that may affect her access to religious services and instruction. Accordingly, to the extent that Fayson's amended

---

[11] Defendants also demonstrate that they provided a religious instructor, whose classes, according to Earle's affidavit, Fayson refused to attend. (D.I. 23 at A3.) Fayson alleges in her answer that Chaudry did not wish to teach to women, and that she was dissatisfied with videos he showed. (D.I. 25, at ¶ 11-12.)

complaint raises a claim for relief under RLUIPA, I will grant summary judgment for the Defendants as to that claim.[12]

       3.     *Free Exercise Claim*

Fayson brings a Section 1983 claim against Defendants, alleging that Defendants have violated her right to freely exercise her religion under the First Amendment by denying her religious services and study classes.  The First Amendment "imposes similar, but less strict, standards on prison administrators than RLUIPA." *Williams v. Bitner*, 359 F. Supp.2d 370, 378 (M.D. Pa. 2005), *aff'd*, 455 F.3d 186 (3d Cir. 2006).  The Supreme Court has stated that prison administrators may regulate inmate behavior, even if their regulations burden religious practices or beliefs, if the regulations are necessary to further "legitimate penological objectives."  *Turner v. Safley*, 482 U.S. 78, 87-89 (1987); *see also Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003).  In judging the reasonableness of such regulations, the Supreme Court has developed a four-part inquiry which takes into account (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. . . ," (2) the alternative methods of exercising the right, (3) the impact granting the request would have on "guards and other inmates," and (4)

---

[12] On the basis of the records furnished by Defendants, it does not appear that Fayson had any pastoral visits between the summer of 2003 and the spring of 2004. Nor is there evidence from those same documents that the Muslim inmates met for prayer between November 2003 (following Ramadan) through March 2004.  However, Fayson requests only injunctive relief and reimbursement for "all expenses pertaining to this case." (D.I. 2 at 4.)  Thus, any claim arising from that evidence would be moot because these worship opportunities have apparently resumed, and Fayson has not provided evidence of a "reasonable expectation that the alleged. . . [problems] will recur. . . ."  *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

the connection between the denial and the "governmental interest put forth to justify it."

*Turner*, 482 U.S. at 89-90; *see also Williams*, 343 F.3d at 217. The plaintiff bears the

burden of demonstrating the unreasonableness of a prison regulation. *Overton v.*

*Bazzetta*, 539 U.S. 126, 132 (2003); *Williams*, 343 F.3d at 217.

Much of the previous discussion under RLUIPA applies in this context. In short,

it is unnecessary to evaluate Fayson's claims of denial of religious services and study

classes under *Turner's* four-part inquiry, because Fayson has not established that

Defendants' regulations impinge on her free exercise of religion. *See DeHart v. Horn*,

227 F.3d 47, 51 (3d Cir. 2000).[13] Therefore, because Fayson has produced no

evidence that the present accommodations for religious services and study classes

impinge upon her free exercise of religion, summary judgment will be granted for

Defendants on this First Amendment claim.[14]

---

[13] The record shows that Muslim inmates meet with Ms. Ismaa'eel for 1.5 hours a week to be instructed in Islam. (D.I. 23 at A3, Ex. E.) Although Defendants have restricted Ismaa'eel's access to the "Gym/Chapel" area because "she did not receive security clearance from the Warden" (D.I. 23 at A3, ¶10), Ismaa'eel is permitted to schedule individual pastoral visits with the Muslim inmates, including Fayson. (*Id.* at 12, A3, ¶¶9-10, A25-26.) Muslim inmates at BWCI are permitted to wear head coverings (*Id.* at A4, ¶11), observe the Ramadan fast (*Id.* at A4, ¶11, A22), and participate in the EID Feast. (*Id.* at A4, ¶11, A24.) BWCI also has an Islamic library for inmates. (*Id.* at A4, ¶11.) Defendants did not violate Fayson's free exercise rights by limiting her access to Ismaa'eel, because Defendants are not required to provide an inmate with the "clergy person or service of his choice." *Small v. Lehman*, 98 F.3d 762, 767 (3d Cir. 1996), *overruled on other grounds by Boerne v. Flores*, 521 U.S. 507 (1997); *see also Scott v. Horn*, Civ. A. No. 97-1448, 1998 WL 57671, at *6 (E.D. Pa. Feb. 9, 1998) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 4-5 (3d Cir. 1970)), *aff'd* 205 F.3d 1330 (3d Cir. 1999).

[14] For the same reason that her allegations of being deprived access to religious instruction in 2003 and 2004 are moot for purposes of her claim under RLUIPA, so too are they moot for purposes of her claim for injunctive relief under the First Amendment. *See supra* note 11.

                4.      *Equal Protection Claim Regarding Worship Opportunities*

        Fayson claims that Defendants have discriminated against Muslim inmates by

showing "a preference for Christianity." (D.I. 12.)  She alleges that Defendants provide

religious services and study classes to Christians "seven days a week and we aren't

offered any." (*Id.*)  She supports that assertion by providing a memorandum from the

Chaplain's office detailing the April 2006 schedule for religious services at BWCI.[15]

(D.I. 25, Ex. J.)  She further alleges that Christian volunteers have access to the entire

institution, whereas access for volunteer religious instructors for Muslim inmates is

restricted.  (D.I. 12; D.I. 25 at ¶14.)  Defendants argue that Fayson lacks evidence to

establish an equal protection violation.  (D.I. 23 at 15-16.)

        To sustain a Section 1983 action based on a violation of the Equal Protection

Clause, a plaintiff must show "the existence of purposeful discrimination" and

demonstrate that the inmate received "different treatment from that received by other

individuals similarly situated." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d

Cir. 1990).  "Inmates are not a protected group, thus, their claims under the Equal

Protection Clause are analyzed under the less strict rational relationship standard."

*Munir v. Kearney*, No. Civ. 03-305-SLR, 2005 WL 1075287, at *5 (D. Del. Apr. 29,

2005) (citing *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001), *cert. denied*,

533 U.S. 953 (2001)).  Prison official need not provide identical religious facilities or

personnel to members of every faith. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).  "A

_____

        [15]  The schedule appears to show that Muslim group services are available only
on Fridays (apart from the access to the Islamic library on Mondays and Wednesdays
and the individually-scheduled pastoral visits).

                                        16

prison regulation does not violate the Equal Protection Clause so long as the classifications established by the regulation serve a legitimate government interest and are reasonable related to that end." *Allach v. Stachelek*, 1998 WL 281930, at *12 (E.D. Pa. May 29, 1998) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)), *appeal dismissed*, 178 F.3d 1278 (3d Cir. 1999), *cert. denied*, 528 U.S. 1141 (2000).  In the event a plaintiff demonstrates a constitutionally significant disparity in treatment between two religious groups, the court must apply the *Turner* factors to determine whether such treatment is reasonable in light of prison conditions.  *Williams*, 343 F.3d at 221 (citing *DeHart*, 227 F.3d at 61).

Fayson alleges that Christian volunteers have greater access to the inmates than do Muslim volunteers.  (D.I. 12; D.I. 25 at ¶14.)  Even accepting as true that Ismaa'eel is subject to restrictions which are not imposed on Christian volunteers, Ismaa'eel's access to the facility was restricted because she had not cleared a background check.  (D.I. 23 at A3, ¶10; D.I. 32, Ex. I at ¶4.)  Institutional order and security are legitimate penal concerns.  *See O'Lone v. Shabazz*, 482 U.S. 342, 350-53 (1987).  Fayson has not provided any evidence to suggest that Christian volunteers are not subject to similar security standards.  Thus, I conclude that she has not raised a genuine issue of material fact sufficient to withstand summary judgment for Defendants with respect to her claim that Christian volunteers have greater access to inmates than do Muslim volunteers.

Fayson also has failed to raise an issue of fact regarding her assertion that Defendants have violated the Equal Protection Clause by providing greater

17

opportunities for Christians to worship. Fayson introduces no evidence tending to show that she is similarly situated with respect to Christian inmates. By contrast, Defendants offer evidence establishing that there are seven Muslim inmates at BWCI. (D.I. 32 at Attach. 1.) It is a fair inference from the record that Christian inmates far outnumber Muslims at the facility. The demand for Christian religious services may be understood to be correspondingly greater.[16] Fayson bears the burden of demonstrating that she is similarly situated with Christian inmates, and she must "make a showing sufficient to establish the existence of every element essential to. . .[her]. . .case," based on evidence admissible at trial. *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1987). Fayson has not put forth evidence creating a genuine issue of material fact as to whether she is similarly situated with respect to Christian inmates. Accordingly, with respect to Fayson's claim that Defendant's violated her equal protection rights by providing greater worship opportunities to Christians, I will grant summary judgment for the Defendants.

### B. *Failure to Provide a* Halal *Diet*

Fayson claims in her amended complaint that Defendants have "refused [her] dietary needs" by failing to provide her with *Halal* meals. (D.I. 12.) Fayson alleges that

---

[16] For example, in *Sutton v. Stewart*, 22 F. Supp. 2d 1097, 1107 n.16 (D. Ariz 1998) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)), *aff'd*, 185 F.3d 869 (9th Cir. 1999), the court concluded that where the plaintiff was the member of a minority religion for which "there is likely to be less demand for. . .services. . .relative to other faiths and greater difficulty in finding a qualified representative," the plaintiff was not similarly situated with adherents of other faiths. Fayson also fails to address the fact that the Christian services appear to be broken down by denomination (Catholic, "Church of Living World", etc.).

she submitted a letter to Ryan asking for a "religiously accommodating diet," but was

told that "it wasn't in the budget." (D.I. 13.) Fayson further alleges that while she has

been denied a diet according to Islamic law, Jewish inmates have been provided kosher

meals. (*Id.*) She attaches a variety of exhibits, including memoranda and kosher

menus, which demonstrate that BWCI provides kosher food to Jewish inmates. (D.I. 25,

Exs. I, J, K.)[17]

 Defendants do not dispute Fayson's contention that she does not receive *Halal*

food. (D.I. 23 at 13.) Rather, they argue that because Fayson's belief in following a

*Halal* diet is not sincere, her belief is not entitled to constitutional protection.[18] (*Id.*)

Defendants also contend that they "do not have the ability to give Fayson a *Halal* diet"

because the Bureau of Management Services "is in charge of food preparation and

distribution for the inmates." (D.I. 23 at 13.)

 By alleging that Defendants prevented her from receiving a *Halal* diet, Fayson

implicates claims under the First Amendment and RLUIPA. By alleging that Jewish

inmates have received preferential treatment, she raises an equal protection claim

under the Fourteenth Amendment.

_____

 [17] Specifically, she includes three documents: (1) a signed memorandum from Colleen Shotzberger, Treatment Administrator, to various prison officials (including Ryan) approving several inmates to observe Passover in April 2006 (D.I. 25, Ex. J); (2) an unsigned memorandum relating to the provision of kosher food for BWCI inmates (*Id.*, Ex. K); and (3) a signed document entitled "Delaware Department of Correction-Revised January 2004 Kosher Menu." (*Id.*, Ex. I).

 [18] Defendants contend that Fayson is not sincere in her desire to follow a *Halal* diet because she purchased numerous items from the prison commissary that are not in accordance with this diet, including "Slim Jims, Cheez Its, Beef Summer Sausage, Nachitos and Tuna in a Bag." (D.I. 23, Ex. F.)

I conclude that Fayson has provided sufficient evidence to create a genuine issue of material fact regarding her claim that, by denying her a *Halal* diet, Defendants have violated RLUIPA, her First Amendment right to freely exercise her religion, and the Equal Protection Clause.

Fayson claims, without dispute from the Defendants, that she has asked for but been denied *Halal* meals. (*See* D.I. 12.) The opportunity to adhere to dietary restrictions can be an important aspect of religious exercise, the denial of which may impose a "substantial burden" on that exercise, in violation of RLUIPA. *See Buchanan v. Burbury*, No. 3:05CV7120, 2006 WL 2010733, at *6 (N.D. Ohio July 17, 2006) (finding that, where the state prohibited an inmate from consuming Kosher meals, the inmate could show that "his religious exercise [had] been substantially burdened" under RLUIPA). Thus, Fayson has raised a genuine issue of material fact as to whether she can sustain her burden of proof that the State has imposed a "substantial burden" on her "religious exercise" by not providing her with *Halal* meals.

Similarly, Fayson has raised a triable issue regarding her claim that Defendants have violated her First Amendment right to freely exercise her religion because they have not provided her with *Halal* meals. *See DeHart v. Horn*, 227 F.3d 47, 52 (3d Cir. 2000) (en banc) (holding that an inmate requesting a special diet on the basis of a sincerely held religious belief has "a constitutionally protected interest upon which the prison administration may not unreasonably infringe"); *Masjid Muhammad-D.C.C. v. Keve*, 479 F. Supp. 1311, 1318 (D. Del. 1979) (holding that the plaintiff's religious

20

practice of consuming only foods with no pork content was entitled to First Amendment protection).

Finally, Fayson has submitted sufficient evidence to overcome a motion for summary judgment on her equal protection claim. To sustain a Section 1983 action based on a violation of the Equal Protection Clause, a plaintiff must show "the existence of purposeful discrimination" and demonstrate that the inmate received "different treatment from that received by other individuals similarly situated." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). Fayson has submitted evidence that BWCI provides a Kosher menu for three Jewish inmates (D.I. 25 at Ex. K), but will not meet her request for a diet that conforms to her Islamic beliefs. (D.I. 13.) By doing so, she has raised a triable issue regarding the alleged disparity in treatment between similarly-situated inmates.

Defendants argue that, because Fayson's belief in following a *Halal* diet is not sincere, her belief is not entitled to constitutional protection. (D.I. 23 at 13.) In support of this argument, Defendants submit evidence of items Fayson purchased at the commissary, items that Defendants allege are not in conformance with a *Halal* diet. (*Id.* at Ex. F.) Defendants' "sincerity" argument fails at this stage for two reasons. First, Defendants have not submitted evidence to support the allegation that the items Fayson purchased are not in conformance with her religious beliefs. Fayson herself claims that "[n]othing that [she] has purchased is against [her] diet." (D.I. 25 at 6.) Second, Fayson argues that, even if her purchases are not in conformance with a *Halal* diet, she "is forced by necessity to order [her] own food from [the] commissary" because

21

her request to receive a *Halal* diet has been denied. (D.I. 25 at 6.) Fayson has

submitted enough evidence to establish that there is a genuine issue of material fact

regarding her sincerity in seeking to follow a *Halal* diet.

      Defendants also argue that they are entitled to summary judgment on Fayson's

*Halal* diet claim because they "do not have the ability to give Fayson a *Halal* diet." They

allege that the "Bureau of Management Services is in charge of food preparation and

distribution for the inmates." (D.I. 23 at 13.) Other than a single statement by Ryan, to

the effect that he does not control the food that inmates receive at BWCI,[19] Defendants

do not provide any evidence that they have no decision-making authority over inmates'

meals. Fayson, on the other hand, alleges that Earle and Ryan have "refused to meet

[her] dietary needs as legislated by [her] religious beliefs." (D.I. 12.) She contends that

she submitted a letter to Ryan requesting "a religiously accomodated diet," but "was

advised that 'it wasn't in the budget.'" (D.I. 13.) She also asserts that Ryan has made

dietary accommodations for inmates of other faiths, suggesting that Ryan does exert

some control over which inmates receive religious food accommodations, but refuses to

make accommodations for her. (D.I. 25 at 5-6.) Because there is a genuine issue of

material fact regarding Earle and Ryan's control over food accommodations, I will deny

Defendants' Motion regarding Fayson's *Halal* diet claims against Earle and Ryan.

However, because Fayson does not allege or provide evidence in her submissions that

Howard exerts any influence over whether prisoners will receive religious food

---

     [19] The entire statement reads as follows: "I do not control the food that the inmates, including Fayson, receive at BWCI. The Bureau of Management Services is in charge of food preparation and distribution for the inmates." (D.I. 32, Ex. I at 2.)

accommodations, I will grant summary judgment regarding Fayson's *Halal* diet claims against Howard.

      C.    *Opening of Legal Mail*

      Fayson contends in her amended complaint that correctional officers at BWCI opened her "legal mail" outside her presence. (D.I. 13.)  Fayson's claim appears to arise from an incident in which she received court correspondence "without an envelope." (D.I. 23, Ex. C; *see also* D.I. 9.)  She further alleges that her mail had been mishandled and perhaps photocopied because the "staple had been removed and replaced in a totally different place." (*Id.; see also* D.I. 9.)  BWCI conducted an investigation and concluded that Fayson's mail "was opened and sent in the mail bag the way normal mail is delivered." (D.I. 23, Ex. C.)  The Investigation Report stated that official prison policy requires that legal mail be opened "by the [recipient] in the presence of a legal officer," and that Fayson's case was an "isolated incident." (*Id.*)

      Under Section 1983, Fayson must demonstrate that she was deprived of a right, immunity, or privilege secured by the Constitution or laws of the United States. Fayson's allegation that prison officials mishandled her legal mail implicates her right of access to the courts under the Fourteenth Amendment.  *Oliver v. Fauver*, 118 F.3d 175, 176-77 (3d Cir. 1997); *Taylor v. Oney*, No. Civ. 00-557-SLR, 2004 WL 609335, at *3 (D. Del. Mar. 24, 2004), *aff'd*, No. 04-2062, 2006 WL 2466078 (3d Cir. Aug. 24, 2006). Regardless of the provision of this right, the extent and nature of a prisoner's access to the courts is not boundless.  The rights of prisoners must be "exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration."

*Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (quoting *Turner*, 482 U.S. at 85).  This means fashioning a functional balance between a "penal institution's need to maintain security within its walls and the rights of prisoners." *Taylor,* 2004 WL 609335, at *3.

The United States Court of Appeals for the Third Circuit has stated that an inmate must show that she suffered an actual injury when she seeks to maintain an action against prison officials for deprivation of the right of access to the courts.  *Oliver*, 118 F.3d at 178.  While an issue of fact may exist as to whether BWCI correctional officers improperly read or photocopied Fayson's mail, Fayson's claim fails because she has not alleged any injury as a result of this incident.  Specifically, she has not alleged how this isolated incident prejudiced her efforts to pursue any legal claim, nor does the record suggest such an injury resulted from the incident.  Fayson still received the disputed piece of mail, which was a copy of her filing fee receipt.  (D.I. 9.) Defendants concluded that this was an isolated incident (D.I. 23, Ex. C), and no such tampering, assuming it was such, has occurred since.  Because Fayson has not established an actual injury as a result of this isolated incident, I will grant Defendants motion for summary judgment on Fayson's claim regarding tampering with her legal mail.

D.    *Derogatory Comment*

Fayson contends in her amended complaint that "staff members have made derogatory remark[s] about [her] belief, and upon writing a grievance they were never handled." (D.I. 12.)  According to her grievance report, she claimed she overheard a correctional officer remark to a fellow inmate that she should "stay away from the Muslims, because they aren't right." (D.I. 23, Ex. G).  Although Fayson contends that

the prison took no responsive action, an accompanying "Informal Resolution" report stated that "Capt. Repetti will discuss this complaint" with the offending officer and "explain to her that making a statement of this nature is not acceptable." (*Id.*) Fayson appears to have signed this document. (*Id.*)

On summary judgment, I view the facts in the light most favorable to Fayson. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). So viewed, the evidence shows that some derogatory comment was made. It appears from her complaint that Fayson may be trying to claim that she was subjected to cruel and unusual punishment, a violation of the Eighth Amendment, or that the remark violated her equal protection rights under the Fourteenth Amendment.

To establish a claim under the Eighth Amendment, a plaintiff must be subjected to conditions so serious as to deprive her of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Fayson presents no evidence of physical injury, and mere verbal abuse of a prisoner has been widely held to be insufficient to constitute a violation of the Eighth Amendment. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that "it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong"); *McBride v. Deer*, 240 F.3d 1287, 1291, n.3 (10th Cir. 2001) (stating that threats and verbal taunts do not constitute an eighth amendment violation); *Pepper v. Carroll*, 423 F. Supp. 2d 442, 442 (D. Del. 2006) (holding that correctional officers' verbal abuse and taunts did not rise to the level of a constitutional violation under the Eighth Amendment). Similarly, such an off-hand religious slur, while certainly inappropriate and regrettable, does not constitute a

violation of the Equal Protection guarantee of the Fourteenth Amendment. *See*

*Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) (holding that an officer's use of a

racial epithet without harassment did not amount to an equal protection violation).

Therefore, Defendants are entitled to summary judgment on Fayson's claim arising

from the correctional officer's alleged derogatory remark .[20]

## VI.    CONCLUSION

Accordingly, I will deny the Motion for Summary Judgment (D.I. 22) with respect

to Fayson's *Halal* diet claims against Earle and Ryan.  I will grant the Motion for

Summary Judgment in all other respects.  An appropriate order will follow.

---

[20]  Defendants also raise a defense of qualified immunity in their Memorandum. (D.I. 23 at 17-18.)  Because Fayson only seeks injunctive relief and costs, it is unnecessary for me to evaluate that defense. *Hill v. Burough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006).

26